*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CT-604

RAMON R. CHERRY, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

FILED 07/27/2017
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CTF-10624-14)

(Hon. Diana Harris Epps, Magistrate Judge)
(Hon. William M. Jackson, Reviewing Judge)

(Argued February 7, 2017                         Decided July 27, 2017)

*Matthew J. Peed* for appellant.

*John W. Donovan*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn Calbert Groce*, Deputy Solicitor General, were on the brief, for appellee.

Before THOMPSON, BECKWITH, and MCLEESE, *Associate Judges.*

MCLEESE, *Associate Judge*: Appellant Ramon R. Cherry challenges his conviction for leaving after colliding, in violation of D.C. Code § 50-2201.05c (a)(2) (2014 Supp.). Mr. Cherry argues that the trial court incorrectly

interpreted § 50-2201.05c (a)(2) and that the evidence was insufficient to support the conviction. We vacate the judgment and remand for further proceedings.

**I.**

The pertinent evidence at trial, which included a surveillance videotape depicting the collision at issue, was as follows. On June 16, 2014, at approximately 9:45 p.m., Mr. Cherry was driving a car on Martin Luther King Jr. Avenue SE. He turned left onto Mellon Street and continued turning, crossing the double yellow line, with the driver's door hanging ajar. The car hopped the curb, onto the sidewalk, and crashed into a wall that enclosed a patio area adjacent to a convenience store. Immediately after the crash, Mr. Cherry got out of the car and walked down the block toward the corner of Martin Luther King Jr. Avenue and Mellon Street, where the convenience store was located. A crowd was gathering at the corner. Mr. Cherry apparently exchanged words with some of the onlookers.

Officer Scott Schmoeller and his partner, who were responding to another call nearby and heard the crash, arrived on the scene within one minute of the crash. As they approached the car, Mr. Cherry and other individuals walked toward the car as well. The officers told the group to back up because the officers

were securing the scene.  Officer Schmoeller asked the members of the group, which included Mr. Cherry, whether they had seen anything.  The group remained silent, and Mr. Cherry did not identify himself as the driver.

Mr. Cherry then walked forward, toward the car and away from the group, while the police were inspecting the car.  Mr. Cherry reached out to the driver's side front door and pushed it partially closed.  There was conflicting evidence as to whether Officer Schmoeller told Mr. Cherry to step away from the car.  In any event, Mr. Cherry did step away.  As Mr. Cherry turned and walked back toward the corner, Officer Schmoeller followed behind for several paces.  The officer then turned back to the car.  Mr. Cherry reached the corner and turned right on Martin Luther King Jr. Avenue, continuing out of view of the surveillance camera and in the general direction of the entrance to the convenience store.  At that point, approximately two minutes had elapsed since the crash.

About twelve seconds after Mr. Cherry walked to the corner and out of view of the surveillance camera, Officer Schmoeller did the same.  Officer Schmoeller then went into the convenience store.  He spoke with people inside the store, who did not appear to be aware of the car crash.  Using a monitor in the basement of the store, Officer Schmoeller was able to view video footage from the surveillance

camera that had recorded the crash. He recognized that Mr. Cherry had been the driver and was among the group that had been standing near the car when the officers first arrived on the scene. Officer Schmoeller then left the store. Officer Schmoeller did not see Mr. Cherry in the store, although he acknowledged that it was possible that Mr. Cherry had walked into the store while Officer Schmoeller was in the basement.

After leaving the store, Officer Schmoeller walked around the surrounding area, looking for Mr. Cherry. Specifically, Officer Schmoeller walked through the 2900 block and part of the 3000 block of Martin Luther King Jr. Avenue, and through a nearby park. Having failed to locate Mr. Cherry, he returned to the car and rejoined his partner. Approximately twelve minutes after the crash, Mr. Cherry approached the car, politely identified himself to the officers, and acknowledged that he had been driving the car and had hit the wall. Mr. Cherry said that he had left because there were people around. Mr. Cherry was placed under arrest and charged with violating the leaving-after-colliding statute.

5

**II.**

**A.**

This case requires us to resolve several questions about the proper interpretation of § 50-2201.05c (a)(2). That portion of the leaving-after-colliding statute applies if the collision at issue results in property damage. Interpreting that provision, however, requires consideration of other portions of the leaving-after-colliding statute. In relevant part, that statute reads:

> (a) Any person who operates . . . a vehicle within the District who knows or has reason to believe that his or her vehicle has been in a collision shall immediately stop and:
>
> (1) Where another person is injured, call or cause another to call 911 or call or cause another to call for an ambulance or other emergency assistance if necessary, remain on the scene until law enforcement arrives, and provide identifying information to law enforcement and to the injured person; [or]
>
> (2) Where real or personal property belonging to another is damaged . . . , provide identifying information to the owner or operator of the property . . . or, where the owner or operator of the property . . . is not present, provide or cause another to provide identifying information and the location of the collision[] to law enforcement or 911 . . . .

(b) It is an affirmative defense to a violation of subsection (a) of this section, which the defendant must show by a preponderance of the evidence, that the defendant's failure to stop or his or her failure to remain on the scene was based on a reasonable belief that his or her personal safety, or the safety of another, was at risk and that he or she called 911, or otherwise notified law enforcement, as soon as it was safe to do so, provided identifying information, provided a description of the collision, including the location of the collision or event, and followed the instructions of the 911 operator or a law enforcement officer.

In finding Mr. Cherry guilty, the magistrate judge concluded that Mr. Cherry was required to identify himself to the officers on the scene and failed to do so quickly enough. The magistrate judge did not explicitly find whether Mr. Cherry had identified himself to the owner of the damaged property. The magistrate judge did express skepticism as to whether Mr. Cherry had gone into the convenience store and identified himself: "If the police are right there, . . . and instead of telling the police that's your car, who would go around the corner, into the store, and identify yourself . . . , who does that? That makes no sense."

In denying Mr. Cherry's motion to set the conviction aside, the reviewing judge concluded that Mr. Cherry was required to identify himself immediately, either to the property owner or to law enforcement. The reviewing judge further concluded that a reasonable fact-finder could find that Mr. Cherry did not identify

himself before he walked out of view of the surveillance camera and that Mr. Cherry therefore failed to act with the required immediacy.

In considering Mr. Cherry's claims, we "apply the same standard of review that the associate judge [was required to apply] to the magistrate judge's order." *In re J.J.*, 111 A.3d 1038, 1043 (D.C. 2015). We "review the magistrate judge's factual findings . . . for abuse of discretion or a clear lack of evidentiary support." *Id.* (internal quotation marks omitted). We determine questions of statutory interpretation de novo. *E.g.*, *Freundel v. United States*, 146 A.3d 375, 378 (D.C. 2016).

**B.**

We turn first to Mr. Cherry's argument that the magistrate judge found Mr. Cherry guilty based on the incorrect premise that Mr. Cherry was required under § 50-2201.05c (a)(2) to provide identifying information to law enforcement even if he properly provided identifying information to the owner of the property. Although the magistrate judge's comments in returning the verdict are not entirely clear, we agree with Mr. Cherry that the verdict may well have rested on the view that Mr. Cherry had a categorical obligation under § 50-2201.05c (a)(2) to provide

identifying information to law enforcement, without regard to whether Mr. Cherry had already provided identifying information to the owner of the property. We also agree that § 50-2201.05c (a)(2) by its plain terms imposes no such categorical obligation. To the contrary, § 50-2201.05c (a)(2) in the first instance requires the person who operates or is in physical control of the vehicle (the "driver") to provide identifying information to the owner or operator of the damaged property. Only if the owner or operator is not present must the driver provide (or cause another to provide) identifying information and the location of the collision to law enforcement or 911.

Unless the evidence was insufficient to support a conviction (an issue we address later in this opinion), we generally vacate and remand for further proceedings when the verdict in a bench trial may have rested on an incorrect understanding of the applicable law. *E.g.*, *Hawkins v. United States*, 103 A.3d 199, 200 (D.C. 2014) (per curiam) ("[I]f th[e] particular basis [for the trial court's verdict] is erroneous but other bases not addressed by the trial court would sustain a conviction, the proper course of action is to remand rather than reverse outright. Therefore, we are constrained to remand this case for the court to reweigh the evidence in the record afresh, and render a new verdict.") (citation and internal quotation marks omitted). The District does not argue that the error in this case

was harmless, and we therefore vacate and remand for further proceedings. We first address two additional statutory-interpretation questions, however, because the answers to those questions provide the framework for our necessary assessment of the sufficiency of the evidence. *See generally, e.g.*, *In re Taylor*, 73 A.3d 85, 106 n.27 (D.C. 2013) ("In circumstances where we have determined that there is reversible error, we assess any sufficiency of the evidence challenge . . . to determine if the government may retry the defendant.").

**1.**

The reviewing judge's ruling rested on the view that under § 50-2201.05c (a)(2) the driver's obligation is to "immediately" provide identifying information. Mr. Cherry argues to the contrary that the term "immediately" does not modify the phrase "provide identifying information." Although the issue is not free from doubt, we ultimately agree with Mr. Cherry.

In § 50-2201.05c (a), the next word after the adverb "immediately" is the verb "stop." Section 50-2201.05c does not explicitly indicate whether "immediately" modifies only the following word or whether "immediately" instead modifies some or all of the subsequent verbs in the section. We need not and do

not decide that issue as to all of the other verbs in the section. Rather, we focus on whether "immediately" modifies the verb "provide" in § 50-2201.05c (a)(2). The latter term appears three times in § 50-2201.05c (a)(2), and those appearances are 67, 104, and 109 words after the term "immediately." One principle of statutory interpretation suggests that in these circumstances "immediately" should not be interpreted to modify "provide": "ordinarily, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote." *Perkins v. District of Columbia Bd. of Zoning Adjustment*, 813 A.2d 206, 211 (D.C. 2002) (internal quotation marks and brackets omitted); *see also, e.g.*, *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1336 (11th Cir. 2016) ("When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.") (internal quotation marks omitted); *Maple Drive Farms Ltd. P'ship v. Vilsack*, 781 F.3d 837, 847 (6th Cir. 2015) (noting presumption that "qualifying phrases attach only to the nearest available target") (internal quotation marks omitted). We also note that "immediately" and the appearances of "provide" in § 50-2201.05c (a)(2) are separated not only by many words but also by "interruptive punctuation": a colon and two subsection designations. *See generally, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994) (suggesting that "interruptive punctuation" points against construing

earlier term to modify subsequent term). Finally, construing "immediately" to modify "provide identifying information" would seem to require that "immediately" also modify the earlier verb "remain," which would create the rather peculiar requirement that the driver involved in a collision resulting in personal injury not only immediately stop but also "immediately . . . remain on the scene." D.C. Code § 50-2201.05c (a)(1).

These syntactical considerations are not by themselves dispositive, but they are supported by more substantive considerations as well. The provision operates sensibly if "immediately" is understood to modify requirements that more naturally require urgent action, such as stopping (and perhaps calling for emergency assistance if someone has been injured), but not to modify requirements, such as "provid[ing] identifying information," that seem less obviously urgent. More concretely, it is far from obvious that the legislature meant to impose criminal penalties on a driver involved in a collision resulting in property damage who (1) immediately stops and remains on the scene; (2) inspects the damage caused by the collision and calls a spouse or an insurance company; and (3) then promptly -- but not immediately -- provides identifying information to the owner or operator of the damaged property or to law enforcement or 911.

These considerations lead us to conclude that the term "immediately" in § 50-2201.05c (a)(2) is better understood not to modify the requirement to provide identifying information.  We are not persuaded by the District's arguments to the contrary.  First, given the distance between "immediately" and the appearances of "provide identifying information," the intervening punctuation, and the grammatical complexity of § 50-2201.05c (a)(2), we are not persuaded by the District's reliance on the principle of statutory interpretation that, where "several words . . . are followed by a phrase which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the phrase be read as applicable to all." *Hargrove v. District of Columbia*, 5 A.3d 632, 635 (D.C. 2010) (brackets and internal quotation marks omitted) (construing "as defined in § 16-2301(9)" to modify entirety of immediately preceding phrase -- "a mentally or physically abused or neglected child" -- rather than simply words "neglected child"); *see also, e.g.*, *Lockhart v. United States*, 136 S. Ct. 958, 963 (2016) (concluding that "of the United States" modified several preceding nouns in list, because "listed items are simple and parallel without unexpected internal modifiers or structure").

Second, the District relies on the affirmative defense available to drivers who "fail[] to stop" or to "remain on the scene" "based on a reasonable belief that

[their] personal safety, or the safety of another, was at risk." D.C. Code § 50-2201.05c (b). That affirmative defense requires a showing that the driver "called 911, or otherwise notified law enforcement, as soon as it was safe to do so," to provide identifying information and other details of the incident. *Id.* As the District points out, the affirmative defense does require drivers who leave the scene of a collision for safety reasons to swiftly provide identifying information to the police. It does not follow, however, that the legislature must have imposed precisely the same requirement on drivers who stop and remain at the scene of the collision. Moreover, the narrowness of the affirmative defense in our view undermines rather than supports the District's argument. Consider a case in which a driver involved in a collision resulting in property damage stops and remains on the scene of the collision but reasonably concludes that it would not be safe to immediately provide identifying information to the other driver. The affirmative defense appears to be inapplicable in that situation, because it is triggered only if the driver does not stop or remain on the scene. Thus, if the driver in such a case waited until it was safe to provide identifying information, the driver would apparently be subject to conviction under the District's view of the statute.

**2.**

Mr. Cherry argues that drivers involved in a collision can wait as long as they like before providing identifying information, except that they must do so before they leave the scene. We disagree. We have already concluded that § 50-2201.05c (a)(2) does not require drivers to provide identifying information immediately. The provision does not otherwise explicitly indicate when drivers must provide identifying information. We conclude that drivers must do so without unreasonable delay. The courts in this jurisdiction reached an analogous conclusion as to an earlier version of the statute, which did not explicitly state how quickly a driver involved in a collision was required to stop. *See, e.g.*, *Seher v. District of Columbia*, 68 App. D.C. 207, 210, 95 F.2d 118, 121 (1938) ("[T]he statute requires a driver, in the event of a collision, to stop within a reasonable distance.") (interpreting D.C. Code § 6-247 (1935)); *cf. generally, e.g.*, *Tarpon Springs Hosp. Found., Inc. v. Anderson*, 34 So. 3d 742, 753 (Fla. Dist. Ct. App. 2010) (where statute was "silent on the time period within which notice must be furnished, under well-established principles of statutory construction, the law implies that the notice must be given within a reasonable time") (internal quotation marks omitted).

Moreover, under Mr. Cherry's view, a driver involved in a collision apparently could lawfully remain on the scene for an extended period of time while refusing to provide identifying information. We are unwilling to interpret the statute to permit recalcitrant drivers to unreasonably frustrate the clear statutory purpose of "assur[ing] the procuring of information which will insure complete identification of the party, the car, and the location of [the driver's] residence." *Oden v. District of Columbia*, 65 App. D.C. 50, 51, 79 F.2d 175, 176 (1935). *See generally, e.g.*, *Whitfield v. United States*, 99 A.3d 650, 661 (D.C. 2014) ("It is a well-established principle of statutory interpretation that the law favors rational and sensible construction. Unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.") (brackets, ellipses, and internal quotation marks omitted).

In arguing to the contrary, Mr. Cherry relies on the provision's title: "Leaving after Colliding." D.C. Code § 50-2201.05c. We have cautioned, however, that

> [t]he significance of the title of [a] statute should not be exaggerated. The Supreme Court has stated that the title is of use in interpreting a statute only if it sheds light on some ambiguous word or phrase in the statute itself. It

> cannot limit the plain meaning of the text, although it may be a useful aid in resolving an ambiguity in the statutory language.

*Freundel*, 146 A.3d at 381 (internal quotation marks omitted). By its terms, § 50-2201.05c is directed not only at requiring drivers involved in a collision to stop and remain on the scene of the collision but also at requiring such drivers to take further steps while on the scene, including summoning necessary medical assistance and providing identifying information. For the foregoing reasons, we hold that a driver involved in a collision resulting in property damage must, without unreasonable delay, provide identifying information to the owner or operator of the damaged property, if the owner or operator is present, or failing that to law enforcement or 911.

## III.

We next address Mr. Cherry's challenge to the sufficiency of the evidence. When assessing the sufficiency of the evidence, we "view the evidence in the light most favorable to the government, giving full play to the right of the fact-finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Brooks v.*

*United States*, 130 A.3d 952, 955 (D.C. 2016) (internal quotation marks and brackets omitted). Although the government bears the burden of presenting sufficient evidence, the government is not required to "negate every possible inference of innocence." *Id.* at 959. The evidence is sufficient if "any rational fact-finder could have found the elements of the crime beyond a reasonable doubt." *Hernandez v. United States*, 129 A.3d 914, 918 (D.C. 2016).

We conclude that the evidence was sufficient for a rational fact-finder to have found beyond a reasonable doubt that Mr. Cherry violated the leaving-after-colliding statute. Viewed in the light most favorable to the verdict, the evidence indicated that: (1) Mr. Cherry did not respond or identify himself as the driver when Officer Schmoeller asked Mr. Cherry and others if they knew what had happened; (2) Mr. Cherry then promptly walked away from the scene of the collision; (3) although Mr. Cherry walked in the general direction of the entrance to the nearby convenience store, Officer Schmoeller was walking not far behind Mr. Cherry and did not see Mr. Cherry in the store; (4) when Officer Schmoeller spoke to people inside the store, they did not seem to be aware of the collision; (5) after recognizing Mr. Cherry on a store surveillance tape, Officer Schmoeller left the store and searched the surrounding area for Mr. Cherry but did not find him; (6) twelve minutes after the collision, Mr. Cherry returned to the scene of the

collision and identified himself to Officer Schmoeller as the driver of the car; and (7) when asked why he had left, Mr. Cherry said that he had done so because there were people around.

Taken together, this evidence would permit a rational fact-finder to conclude that Mr. Cherry never notified the owner of the wall; that he instead decided to leave the scene of the accident; and that although he eventually returned to the scene and identified himself to the police, his departure and the resulting twelve-minute delay were unreasonable. *Cf., e.g.*, *People v. Quiroga*, 20 Cal. Rptr. 2d 446, 452 (Ct. App. 1993) (upholding defendant's conviction for resisting police officer based on refusal to identify himself; refusal resulted in thirty-minute delay in booking process). *See generally United States v. Young*, 609 F.3d 348, 353 (9th Cir. 2010) ("The reasonableness of [] delay varies with each case and depends on the totality of the circumstances.").

It is true that direct evidence did not categorically foreclose the possibility that, unbeknownst to Officer Schmoeller, Mr. Cherry had previously notified an owner, called 911, or caused someone else to call 911. But the prosecution was not required to "negate every possible inference of innocence." *Brooks*, 130 A.3d at 959. Moreover, a rational fact-finder could find that the scenarios floated by Mr.

Cherry were not plausible in light of the evidence. Mr. Cherry clearly seemed reluctant at the outset to identify himself. When Mr. Cherry later returned to identify himself to law enforcement, he admitted to leaving the scene because there were people around, and he did not suggest that he had already notified an owner or called 911. Given these circumstances, a rational fact-finder could conclude that Mr. Cherry did not provide identifying information to an owner or 911 before he returned to the scene and spoke with Officer Schmoeller. *Cf. Lev v. State*, No. 13-13-00156-CR, 2015 WL 737226, at *3-5 (Tex. App. Feb. 20, 2015) (where (1) defendant got out of car after collision, spoke to two witnesses, and did not provide information to either of them; (2) defendant later told friend that she had "freaked out" and left scene; and (3) police located defendant's car based on license-plate number provided by witness, evidence was sufficient to support conviction for leaving scene of collision without providing information; although other witnesses who were present on scene did not testify at trial, fact-finder could reasonably conclude that defendant had not provided required information).

In arguing that the evidence was insufficient, Mr. Cherry relies upon *State v. Cronin*, 417 N.W.2d 169 (1987), a case in which the Supreme Court of Nebraska held that the evidence was insufficient to support a conviction for leaving the scene of an accident without providing identifying information. The evidence in *Cronin*

was weaker than the evidence in this case. In *Cronin*, a bystander saw the defendant collide with a parked car. *Id.* at 170. The defendant stopped, and someone came out of a nearby building and yelled at the defendant. *Id.* at 171. The bystander could not see whether the defendant displayed his driver's license and registration. *Id.* After about a minute, the defendant drove off. *Id.* A police officer subsequently interviewed the defendant, who said that he had been involved in the accident, that he had blacked out, and that he left the scene because he was scared. *Id.* The officer did not ask whether the defendant had provided identifying information on the scene. *Id.*

There are two important differences between *Cronin* and the present case: (1) in the present case, Mr. Cherry failed to answer when Officer Schmoeller directly asked a group including Mr. Cherry what had happened, whereas there was no similar failure in *Cronin*; and (2) in the present case, Officer Schmoeller's investigation supported a strong inference that Mr. Cherry had not reported the accident to those inside the convenience store, whereas in *Cronin* there was no evidence of a similar investigation into whether the driver had provided information to the owner of the damaged car.

Finally, Mr. Cherry suggests that a driver can "provide identifying information" for purposes of § 50-2201.05c (a)(2) by simply leaving a car at the scene that has identifying information in or on it. We disagree. Section 50-2201.05c plainly requires the driver to take the affirmative step of providing the required identifying information. It does not permit a driver who fails to take such steps to rely on the investigative efforts of others. *Cf. People v. Arzabala*, 317 P.3d 1196, 1202-03 (Colo. App. 2012) (finding evidence sufficient to support conviction for leaving scene of accident without providing required information; defendant did not provide information when asked to do so by police officer, and although officer later found defendant's wallet and other identifying information in car, "there was sufficient evidence showing that defendant left the scene without performing at least some of the affirmative obligations set forth in" statute at issue). In support of the contrary conclusion, Mr. Cherry cites only a dissenting opinion, *State v. Veiman*, 546 N.W.2d 785, 793 (Neb. 1996) (Gerrard, J., dissenting), and an unpublished decision that does not support his argument, *City of Dayton v. Garman*, No. 17042, 1999 WL 12727, at *2-3 (Ohio Ct. App. Jan. 15, 1999) (finding evidence sufficient to support conviction for leaving scene of accident without providing required information, including license-plate number; "[T]he fact that the license plate number of a motorist involved in an accident is ascertained from other sources does not satisfy the motorist's obligation to give

that number before leaving the scene. A contrary conclusion would eviscerate the requirement. . . . The terms of the ordinance expressly require that the driver involved in a collision give his license plate number, and, in our view this requires some affirmative act on his part."). Although the court in *Garman* did say in dicta that its "conclusion would be otherwise if, before leaving the scene, the driver is made aware that the other driver, or a police officer, has already recorded his license plate number," *id.*, neither in Ohio nor in this jurisdiction does a driver comply with the requirements of the relevant statute simply by providing a license-plate number. *See id.* (Ohio statute requires driver to provide name and address, as well as license-plate number); D.C. Code § 50-2201.02 (8) (2014 Supp.) (defining "identifying information" as "the name, complete address, and telephone number of the operator of the vehicle; if the owner of the vehicle is different from the operator of the vehicle, the name, complete address, and telephone number of the owner of the vehicle operated; the tag number of the vehicle operated or, if no tag number, the vehicle identification number; and insurance information for the vehicle operated").

For the foregoing reasons, we vacate the judgment and remand for the magistrate judge to reconsider the verdict.

*So ordered.*