# District of Columbia
# Court of Appeals

**No. 14-CM-1091**

DEANDRE BROOKS,

Appellant,



FILED

JAN 28 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.                                                        **CMD-955-14**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia<br>Criminal Division

BEFORE:   Blackburne-Rigsby and McLeese, Associate Judges; and Farrell, Senior Judge.

**J U D G M E N T**

This case came to be heard on the transcripts of record, the briefs filed, and was argued by counsel.  On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that appellant's conviction for assaulting a police officer is affirmed; however, appellant's conviction for possession of drug paraphernalia is reversed, and the case is remanded with instructions to enter a judgment of acquittal on that count.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: January 28, 2016.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-1091

DEANDRE BROOKS, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 1/28/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CMD-955-14)

(Hon. Truman A. Morrison III, Trial Judge)

(Submitted September 30, 2015                    Decided January 28, 2016)

*Jamison Koehler* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *David P. Saybolt*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant DeAndre Brooks seeks reversal of his convictions for assault on a police officer and possession of drug paraphernalia. Mr. Brooks challenges the sufficiency of the evidence to support his conviction for possession of drug paraphernalia. He also argues that the trial court abused its

discretion by refusing to continue the trial to permit further plea negotiations. We hold that the evidence was insufficient to support Mr. Brooks's conviction for possession of drug paraphernalia. We also hold that the trial court acted within its discretion in denying a continuance.

**I.**

The United States's evidence at trial was as follows. United States Park Police investigators encountered Mr. Brooks and three other men while searching for robbery suspects. One of the men was arrested after he fled and discarded a backpack containing a handgun. When the police asked Mr. Brooks and the other two men to stop, Mr. Brooks turned and walked away. An officer touched Mr. Brooks's shoulder, and Mr. Brooks "swatted" away the officer's hand and struck the officer's forearm. The officer attempted to place Mr. Brooks under arrest, but Mr. Brooks flailed about, kicking and trying to break free. The police arrested Mr. Brooks for assaulting a police officer.

In a search incident to the arrest, one of the officers, a twelve-year veteran assigned to investigate narcotics and vice offenses, found in Mr. Brooks's pants pocket "a metal grinder with a picture of Bob Marley on the front that is commonly

used for grinding up marijuana." Another officer, who was assigned to the Narcotics Unit and had been involved in over 500 drug operations, testified that he had recovered grinders numerous times. That officer further explained that grinders are used to grind up marijuana by people who smoke marijuana, and that when officers arrest people with grinders, there typically is green plant material in the grinders. Police also seized a black ski mask and four cell phones from Mr. Brooks.

The defense put on no witnesses. After closing arguments, the trial court found Mr. Brooks guilty, explaining:

> I find that although there is not a rich amount of detail about Bob Marley grinders, the last witness has told us that he has seized them on many occasions, that they are commonly used to grind marijuana and I think that is enough to infer an intent to use in the absence of any other explanation emerging from the evidence that would cast a doubt on that . . . .

## II.

Mr. Brooks challenges his conviction for possession of drug paraphernalia, arguing that there was insufficient evidence that he intended to use the grinder for

drug-related purposes. *See* D.C. Code § 48-1103 (a)(1) (2015 Supp.) (prohibiting possession of drug paraphernalia with intent to use to, e.g., "process," "prepare," "contain," "or otherwise introduce into the human body a controlled substance"). We agree.[1]

In considering a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the government, giving full play to the right of the [fact-finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Medley v. United States*, 104 A.3d 115, 127 n.16 (D.C. 2014) (internal quotation marks omitted). "[T]he evidence is sufficient if, after viewing it in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . ." *(Tamara) Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012) (internal quotation marks omitted). This court will not reverse a trial court's factual findings after a bench trial unless those findings are "plainly wrong or without evidence to support [them]." D.C. Code § 17-305 (a) (2012 Repl.). On

---

[1] Because we determine that the evidence was insufficient to establish that Mr. Brooks had the requisite intent, we have no occasion to consider whether the evidence was sufficient to establish that the grinder otherwise met the statutory definition of drug paraphernalia. D.C. Code § 48-1101 (3) (2012 Repl.).

the other hand, "although a [fact-finder] is entitled to draw a vast range of reasonable inferences from evidence, [the fact-finder] may not base a verdict on mere speculation." *Schools v. United States*, 84 A.3d 503, 508 (D.C. 2013) (internal quotation marks and citation omitted). "[A]ppellate review of sufficiency of the evidence is [not] toothless," and "[w]e have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a [fact-finder] behaving rationally really could find it persuasive beyond a reasonable doubt." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc).

As with other forms of intent, a defendant's intent to use drug paraphernalia unlawfully may be proved not only through direct evidence but also circumstantially or inferentially. *See, e.g.*, *(Sandra) Williams v. United States*, 604 A.2d 420, 421 (D.C. 1992) (jury could reasonably infer that defendant used or intended to use scale in connection with drug operation); *see generally, e.g.*, *Abdulshakur v. District of Columbia*, 589 A.2d 1258, 1263 (D.C. 1991) ("Intent is a state of mind, and must ordinarily be proved circumstantially."); *cf. Fatumabahirtu v. United States*, 26 A.3d 322, 335-36 (D.C. 2011) (intent element of different subsection of drug-paraphernalia provision may be proven "by credible and compelling direct, indirect, or circumstantial evidence"). In this case, there

was no evidence that anyone saw Mr. Brooks use the grinder in any way. Nor was there evidence that Mr. Brooks made any statements suggesting an intent to use the grinder for drug-related purposes. Nor, finally, was there any evidence that Mr. Brooks possessed or used drugs, either at the time of the offense or at any previous time. Rather, the United States argues that Mr. Brooks's intent to use the grinder for drug-related purposes can be inferred from three pieces of evidence: (1) the grinder bore the likeness of Bob Marley; (2) an experienced narcotics officer testified that people who smoke marijuana commonly use grinders to grind up marijuana, and (3) another experienced narcotics officer testified that he had recovered grinders numerous times.[2]

In explaining the significance of the first piece of evidence, the United States argues that "the trial court was no doubt aware [that] Bob Marley is the late reggae superstar whose name is virtually synonymous" with marijuana. We assume for current purposes that the trial court may have been aware of a general association between Bob Marley and marijuana. At trial, however, the United States introduced no evidence that Bob Marley was generally associated with marijuana,

---

[2] In arguing that the evidence was sufficient to support an inference that Mr. Brooks intended to use the grinder for drug-related purposes, the United States does not rely on the evidence that police seized a ski mask and cell phones from Mr. Brooks. The trial court also did not rely on that evidence in explaining its verdict of guilt. We similarly place no reliance on that evidence.

did not ask the trial court to take judicial notice of such an association, and in fact never explicitly suggested that such an association exists. Moreover, although the trial court did refer to the grinder as a "Bob Marley grinder," as one of the officers had, the trial court at no point indicated that it was aware of a general association between Bob Marley and marijuana, that it was taking judicial notice of such an association, or that it in any other way was relying on such an association as evidentiary support for a finding of guilt. Given those circumstances, we see no basis for an inference that the trial court sub silentio took judicial notice of such an association in finding Mr. Brooks guilty. *See generally Bradley v. District of Columbia*, 107 A.3d 586, 600-01 (D.C. 2015) (trial court should not take judicial notice sub silentio, without giving parties notice and opportunity to be heard).[3]

We acknowledge an ambiguity in the testimony that an officer found "a metal grinder with a picture of Bob Marley on the front that is commonly used for grinding up marijuana." On one reading, that testimony could be understood to assert generally that grinders are commonly used for grinding up marijuana, with

---

[3] On appeal, the United States has not argued that this court could take judicial notice in the first instance of a general association between Bob Marley and marijuana. We therefore do not address that issue, although we note that one treatise concludes that an appellate court may not take judicial notice for the first time on appeal of a fact, not considered by the fact-finder, that would "supply an essential element of proof." 29 Am. Jur. 2d *Evidence* §§ 46-47, Westlaw (database updated Nov. 2015).

the reference to Bob Marley being merely a physical description of this particular grinder. On another reading, the testimony could be understood to assert more specifically that "grinder[s] with a picture of Bob Marley" are commonly used to grind up marijuana. We tend to think that the former reading is more natural as a matter of grammar, and we also note that another officer's testimony was worded in terms of grinders in general, not grinders with Bob Marley's picture. Nevertheless, we assume for current purposes that the testimony at issue could reasonably be read as asserting an association between marijuana and grinders bearing Bob Marley's picture. *Cf. Medley*, 104 A.3d at 127 n.16 (in assessing sufficiency of evidence, court views evidence in light most favorable to government).

Even on that assumption, however, we conclude that the picture on the grinder does not add materially to the strength of the evidence in this case. In the absence of evidence of some other connection between marijuana and Bob Marley, either from testimony or through proper judicial notice, the picture on the grinder logically serves only as an unexplained identifying characteristic, similar to color or physical construction, with no independent significance. We thus are left with the evidence that grinders are commonly used to grind marijuana and that an experienced narcotics officer had recovered grinders numerous times. As to the

latter piece of evidence, we note that the officer in question testified that the grinders he had recovered typically had green plant material in them, whereas there was no suggestion in the present case that the grinder recovered from Mr. Brooks had such material in it. This difference tends to weaken any inference that Mr. Brooks's grinder was intended to be used for a drug-related purpose.

More generally, the United States does not cite, and we have not found, any case upholding a conviction for possession of drug paraphernalia based solely on evidence that a single item possessed by the defendant is commonly used for drug-related purposes. To the contrary, we have suggested that such evidence might well be insufficient. *See Crawford v. United States*, 278 A.2d 125, 126-28, 127 n.6 (D.C. 1971) (upholding conviction for possession of implements of crime, based on evidence that defendant possessed needle and syringe in car, that narcotics "kit" was also in car, and that defendant had ten to twenty puncture marks in his arm, indicating that defendant was drug user; court notes that "serious question would be raised" if conviction rested on possession of needle and syringe standing alone). The most comparable cases we have found from other jurisdictions support a conclusion that the evidence in this case was insufficient. *See, e.g.*, *Sluder v. State*, 997 N.E.2d 1178, 1179-82 (Ind. Ct. App. 2013) (evidence insufficient to support conviction for possession of drug paraphernalia with intent to use in connection

with controlled substance, where defendant had syringe in back pocket; "In this case, the State presented no evidence that [defendant] intended to use the syringe to inject a controlled substance into his body. There was no evidence of track marks on [defendant's] arms, past drug use, previous drug convictions, or the presence of drugs that would circumstantially establish his intent to use drugs."); *Village of Newburgh Heights v. Moran*, No. 84316, 2005 WL 1245011, at \*1-2 (Ohio Ct. App. May 26, 2005) (evidence insufficient to support conviction for possession of drug paraphernalia with intent to use in connection with controlled substance, where defendant had wooden pipe in pants pocket when arrested and officer testified that such pipes are used to smoke marijuana; court emphasized that there was no evidence that defendant had used pipe to smoke marijuana and no evidence that pipe had residue from illegal substance); *State v. Hedgecoe*, 415 S.E.2d 777, 781 (N.C. Ct. App. 1992) (evidence insufficient to support conviction for possession of drug paraphernalia with intent to use in connection with controlled substance, where defendant had syringe and needle on person at time of arrest and officer testified that such items are used to introduce drugs into body).

In contrast, the cases in which we have found the evidence sufficient to support an inference of intent to use items for drug-related purposes all involved evidence that was substantially stronger than the evidence in this case, such as

evidence that the defendant also possessed illegal drugs, that drug residue was on the items, or that the defendant possessed a number of different items that together supported an inference of intent. *See, e.g.*, *Carter v. United States*, 614 A.2d 542, 544 (D.C. 1992) (sufficient evidence where police found syringes and aluminum bottle-top cookers near small plastic bag that contained traces of heroin); *(Sandra) Williams*, 604 A.2d at 421 (sufficient evidence where police found scale in close proximity to glass pipes and other paraphernalia, in addition to large quantity of crack cocaine); *Rosser v. United States*, 313 A.2d 876, 879-80 (D.C. 1974) (sufficient evidence where police found needle, syringe, and cooker, which together formed "user's kit," along with controlled substance); *cf. Fatumabahirtu*, 26 A.3d at 325-36 (sufficient evidence that gas-station store employee who sold pen and scouring pad to undercover officer knew or reasonably should have known items were intended for drug use, where (1) undercover officer asked for "ink pen" and employee provided pen with no ink and scouring pad, packaged together in little bag; (2) pen and scouring pad can be used to make pipe for ingesting crack; (3) numerous other pens and scouring pads were in store; and (4) digital scales and ziplock bags were also in store). *But cf. (Kenny) Williams v. United States*, 304 A.2d 287, 289-90 (D.C. 1973) (per curiam) (finding evidence insufficient despite stipulation that forensic chemist would testify that "small wooden pipe" contained marijuana residue).

We hold that the evidence in the present case was insufficient. The United States's evidence supports a conclusion that there is an association between marijuana and grinders. But drug use and drug trafficking are associated with a wide array of items, including spoons, needles, syringes, ziplock bags, microwave ovens, cigarette rolling papers, razor blades, pipes, foil, mirrors, straws, scissors, measuring cups, strainers, and scales. *See, e.g.*, *Barnes v. United States*, 760 A.2d 556, 558 (D.C. 2000); *United States v. Lyons*, 448 A.2d 872, 873 (D.C. 1982) (per curiam); *State v. Laplante*, 650 N.W.2d 305, 308-11 (S.D. 2002); *State v. Fuller*, 674 S.E.2d 824, 831 (N.C. Ct. App. 2009); *State v. Beach*, 610 So. 2d 908, 914 (La. Ct. App. 1992); *People v. Berry*, 555 N.E.2d 434, 436 (Ill. Ct. App. 1990). The fact that a defendant possesses a single such item, standing alone, does not in our view normally suffice to permit a finding beyond a reasonable doubt that the defendant intended to use the item for a drug-related purpose.

We recognize that there was no evidence in this case as to lawful uses of grinders. Neither, however, was there evidence that grinders are used exclusively or even primarily in connection with illegal drugs. *See generally*, *e.g.*, *United States v. Assorted Drug Paraphernalia*, 90 F. Supp. 3d 1222, 1229 (D.N.M. 2015) (noting party's argument that grinders are used in cooking and for tobacco). The

presence or absence of such evidence can be significant in assessing the sufficiency of the evidence as to a defendant's intent. *See, e.g.*, *McKoy v. United States*, 263 A.2d 645, 649 (D.C. 1970) (intent to use implements unlawfully can be inferred from "possession of implements raising sinister implications, i. e., high likelihood of no legitimate use") (internal quotation marks omitted); *cf. Fatumabahirtu*, 26 A.3d at 325-26 (finding evidence sufficient where officer testified that store employee sold undercover officer pen that could not write); D.C. Code § 48-1102 (a)(11) (2012 Repl.) (in determining whether object is drug paraphernalia, fact finder shall consider, among other things, "existence and scope of legitimate uses for the object in the community"). But proof of a defendant's possession of a single item associated with drug use or trafficking does not operate to create a presumption of intent to use for drug-related purposes, shifting the burden to the defendant to produce evidence that the item also has lawful uses. For example, imagine a case in which the United States introduced evidence that the defendant possessed a single silver spoon, that silver spoons are used by heroin addicts to prepare heroin for injection, and that silver spoons are often recovered in connection with heroin arrests. We think it clear that such evidence would be insufficient to support a conviction, even if the defendant did not introduce evidence that silver spoons have lawful uses. Of course, reasonable fact-finders in such a case would presumably bring to bear their common-sense knowledge that

silver spoons have lawful uses. *See, e.g.*, *(Devenn) Smith v. United States*, 899 A.2d 119, 124 (D.C. 2006) (jury may draw common-sense inferences from evidence). It is less clear what common-sense knowledge a reasonable fact-finder could or would bring to bear on the lawful uses of grinders, but in our view that difference in degree does not warrant a different conclusion in the circumstances of this case.

In sum, we acknowledge that the United States does not need to "negate every possible inference of innocence." *Gorbey v. United States*, 54 A.3d 668, 699 (D.C. 2012) (internal quotation marks omitted). But the United States does bear the burden of providing sufficient evidence to permit a reasonable fact-finder to find guilt beyond a reasonable doubt. We hold that the United States did not carry that burden in this case. We therefore reverse Mr. Brooks's conviction for possession of drug paraphernalia.

**III.**

Mr. Brooks also argues that the trial court abused its discretion by refusing to grant his request to continue the trial. We disagree.

**A.**

The circumstances relevant to Mr. Brooks's motion for a continuance are as follows. The United States charged Mr. Brooks in the present case on January 16, 2014. Mr. Brooks was charged in a separate case in February 2014. After a status hearing in March 2014, this case was continued to allow Mr. Brooks time to consider a plea offer extended just before the hearing. Several weeks later, Mr. Brooks rejected the plea offer and this case was set for trial on June 6, 2014. Mr. Brooks was charged in another case in March 2014 and in two other cases in May 2014.

On June 4, 2014, Mr. Brooks filed a motion to continue the trial scheduled for June 6, 2014. The motion explained that Mr. Brooks had several cases pending and had "not yet received a global plea offer to resolve all matters." The motion also noted that Mr. Brooks was represented by a different attorney in one of the cases. Counsel stated in the motion that it was "likely that these matters can be resolved short of trial."

The same day the continuance motion was filed, the United States communicated a global plea offer to Mr. Brooks by email.  Also that same day, the trial court denied the continuance motion.

On the day of trial, counsel for Mr. Brooks orally renewed the motion to continue.  The trial court initially responded by explaining that the court's calendar could not operate efficiently if the court routinely delayed scheduled trials in the hope that multiple cases could be resolved by way of a global plea agreement.  The trial court further expressed concern that any such agreement should have been worked out in advance of the trial date.  Nevertheless, the trial court offered defense counsel time to discuss a plea with her client.  Defense counsel argued that the United States's most recent plea offer was not valid, later explaining that the plea offer required Mr. Brooks to plead guilty to being a felon in possession of a firearm, but Mr. Brooks had not been charged with that offense and could not properly plead guilty to it, because he did not have a prior felony conviction.  Defense counsel also pointed out that the United States did not oppose a continuance.

The trial court reiterated its scheduling concerns and asked defense counsel how likely it was that a plea agreement could be reached.  Defense counsel

responded that she would have to discuss that with her client. The trial court suggested that defense counsel make efforts by telephone to work out a plea agreement, and briefly passed the case in part for the parties to address discovery issues. The trial court indicated, however, that it was unwilling to grant a continuance in the absence of any assurance that a plea agreement was likely. When the parties returned after the break, defense counsel made no further representations about a possible plea agreement, and the trial began on the scheduled date.

**B.**

We review a trial court's denial of a continuance for abuse of discretion. *See Moctar v. United States*, 718 A.2d 1063, 1065 (D.C. 1998) ("As we have repeatedly held, the grant or denial of a continuance rests within the sound discretion of the trial judge, to whom we accord wide latitude."). "A party seeking a continuance must make a showing that [the continuance] is reasonably necessary for a just determination of the cause . . . ." *Kyle v. United States*, 759 A.2d 192, 196 n.2 (D.C. 2000) (internal quotation marks omitted). "Relevant factors in determining whether there has been an abuse of discretion include the reasons for the request for a continuance, the prejudice resulting from its denial, the party's

diligence in seeking relief, any lack of good faith, and prejudice to the opposing party." *Daley v. United States*, 739 A.2d 814, 817 (D.C. 1999). The trial court also may properly consider the public's interest in the "prompt, effective, and efficient administration of justice." *Leak v. United States*, 757 A.2d 739, 744 (D.C. 2000) (internal quotation marks omitted). Considering the relevant factors, we find no abuse of discretion in this case.

Both in the trial court and in this court, Mr. Brooks's argument for a continuance rests entirely on a desire to have additional time to try to reach a global plea agreement. It is well settled that "there is no right to a plea offer or a plea bargain." *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)). Moreover, Mr. Brooks does not cite, and we have not found, any case holding that a trial court abused its discretion by declining to continue a trial to permit further plea bargaining. To the contrary, several courts have suggested that trial courts need not grant such continuances and that the possible loss of a favorable plea agreement is not the kind of prejudice that could give rise to an abuse of discretion. *See, e.g.*, *State v. Darelli*, 72 P.3d 1277, 1282 (Ariz. Ct. App. 2003) ("There is no need to delay a trial to complete plea negotiations. When faced with a last minute request for plea negotiations, a trial judge can (and most often should) proceed forward with the merits of the case by

mandating that the trial proceed as scheduled."); *Commonwealth v. Kubiac*, 550 A.2d 219, 224-25 (Pa. Super. Ct. 1988) (trial court did not abuse discretion in denying request for continuance of trial to permit further plea negotiations); *Zambrana v. State*, 483 N.E.2d 59, 62 (Ind. 1985) (same; "although [defendant] may have lost an opportunity to plea bargain, there has been no showing, or claim, that his defense was prejudiced").  The loss of a further opportunity to plea bargain is different in character from the kinds of prejudice reflected in cases in which this court has reversed trial-court rulings denying a continuance.  *See, e.g.*, *Daley*, 739 A.2d at 818 (prejudice resulted from denial of continuance requested to obtain witness whose testimony could exonerate defendant); *Hairston v. Gennet*, 501 A.2d 1265, 1268 (D.C. 1985) (prejudice resulted from denial of continuance where new counsel was left without opportunity to prepare to rebut opponent's evidence).

Nevertheless, the Supreme Court has recently reiterated the "central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012).  We therefore assume, without deciding, that a defendant in some circumstances might be able to establish that a continuance to permit further plea bargaining was "reasonably necessary for a just determination of the cause." *Kyle*, 759 A.2d at 196 n.2 (internal quotation marks

omitted). Even on that assumption, however, we find no abuse of discretion in the circumstances of this case, for several reasons.

First, although the trial court gave defense counsel several opportunities to make a clearer record about the likelihood that a global plea agreement would be reached, defense counsel was unable to provide any concrete assurance on that point. Thus, it was speculative whether a continuance would have benefitted Mr. Brooks. *Cf., e.g.*, *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. Ct. App. 2010) ("Speculation will not suffice to obtain reversal for a trial court's failure to grant a continuance."). The speculative nature of the prejudice alleged is illustrated by the fact that the trial court had previously granted a continuance for Mr. Brooks to consider a plea offer, and Mr. Brooks rejected that offer. On the day of trial, a viable plea offer had apparently not yet been extended, and Mr. Brooks could give the trial court no assurance that he would accept a future offer.

Second, the written motion to continue was not filed until two days before trial, the last day on which such a motion can typically be filed. *See* Super. Ct. Crim. R. 111 (c) ("Except in extraordinary or unforeseen circumstances, no continuances shall be granted in any case unless requested at least 2 days before the scheduled date of trial."). Although the steady stream of additional charges

against Mr. Brooks and the fact that he had different attorneys for different cases did complicate matters to a degree, in our view the trial court reasonably took the view that defense counsel could have been more diligent in trying to work out a plea agreement before the trial date, as well as on the date of trial.

Third, although the continuance request was unopposed and there is no suggestion that Mr. Brooks was acting in bad faith, the trial court reasonably pointed out that trial in this case would only take a few hours and that routinely continuing such minor matters in the hope of obtaining a global plea agreement involving more serious charges could cause delay and congestion on the court's calendar. *See, e.g.*, *Lyons v. Jordan*, 524 A.2d 1199, 1203-04 (D.C. 1987) ("[I]t is important that the trial calendar be kept moving and that last minute continuances be avoided where possible. This is not an easy task and the determination of the trial court to deny a request for a continuance should not be disturbed on appeal lacking a showing that it was a clear abuse of discretion.") (internal quotation marks omitted).

In sum, this is not a case where there was "a rigid insistence by the court upon expedition of trial in the face of a justifiable request for delay." *O'Connor v. United States*, 399 A.2d 21, 28 (D.C. 1979). Rather, the trial court reasonably

balanced the relevant considerations and acted within its discretion to deny the request for a continuance. *Cf. generally, e.g.*, *Lewis v. United States*, 996 A.2d 824, 831 (D.C. 2010) ("We think the [trial] court should be commended for its careful balancing of the pertinent factors [in making evidentiary ruling]; we certainly do not discern any abuse of discretion that would warrant reversal."). For essentially the same reasons, we are not persuaded by Mr. Brooks's suggestion that the denial of a continuance violated Mr. Brooks's constitutional rights to due process of law and effective assistance of counsel.

## IV.

In sum, we affirm Mr. Brooks's conviction for assaulting a police officer but reverse Mr. Brooks's conviction for possession of drug paraphernalia and remand with instructions to enter a judgment of acquittal on that count.

*So ordered.*