*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CO-0645

RODNEY C. WILLIAMS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(1982-FEL-005231)

(Hon. Michael K. O'Keefe, Trial Judge)

(Argued January 18, 2024                                    Decided March 14, 2024)

*Paul Maneri*, Public Defender Service, with whom *Samia Fam* and *Mikel-Meredith Weidman*, Public Defender Service, were on the brief, for appellant.

*Eric Hansford*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and SHANKER, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: In 2016, the Council of the District of Columbia enacted the Incarceration Reduction Amendment Act ("IRAA"), which allows for persons serving a term of imprisonment for violations of the law they committed before they were 25 years old to seek modification of their sentence.

Under the IRAA, defendants can move for subsequent sentence modifications three years after the order on their previous application becomes final. In this appeal, we are asked to determine whether an order deciding an IRAA motion becomes final on the date of docketing of the trial court's written order, or after the time for appeal has lapsed. Appellant Rodney C. Williams filed an initial IRAA application in 2018, which was denied in part by the trial court in 2019. Mr. Williams appealed to this court, which affirmed the trial court's decision on October 6, 2021. In January 2023, more than three years after the trial court's order on his initial application, Mr. Williams filed a notice of intent to file a second IRAA application. After initially ordering briefing on the matter, the trial court dismissed Mr. Williams' second IRAA application as premature and, therefore, untimely. The trial court determined that the time for Mr. Williams to file his second IRAA application was not yet ripe because an order on an IRAA application does not become final until the filing of the appellate mandate, if the applicant appeals the order.

We disagree with the trial court and hold that an order on an IRAA application becomes final on the date of the trial court's order on the application, regardless of whether or not the movant appeals the initial determination. Accordingly, we reverse the trial court's decision and remand for further proceedings on Mr. Williams' second, timely filed IRAA application.

## I.     Factual Background & Procedural History

Mr. Williams was incarcerated in 1982 for a series of crimes he committed when he was seventeen years old.  In July 1983, Mr. Williams, who was 18 years old at the time, pled guilty to a series of offenses and was sentenced to 57-171 years of incarceration.  Mr. Williams filed his first application to reduce his sentence under IRAA, D.C. Code § 24-403.03, in December 2018.  Six months later, in June 2019, the Superior Court granted Mr. Williams' application in part and denied it in part.  The court reduced Mr. Williams' sentence to a total of 54-162 years, making him immediately eligible for parole, but declined to modify his sentence to allow for immediate release.  A month later, Mr. Williams filed a motion to reconsider the court's ruling on his initial IRAA application, which was denied by the court in September 2019.  On September 6, 2019, Mr. Williams appealed the Superior Court's order on his IRAA motion.  This court affirmed the trial court's order two years later, issuing the mandate on October 6, 2021.[1]  On January 25, 2023, Mr. Williams filed a Notice of Intent[2] to file a second IRAA application and, in March 2023, the Superior Court filed a briefing order in anticipation of

---

[1] *See Rodney C. Williams*, No. 19-CO-0809, Mem. Op. & J (D.C. Sept. 14, 2021).

[2] In November 2022, the District of Columbia Superior Court issued guidelines requiring that counsel for all IRAA petitioners file a Notice of Intent to file an IRAA motion.  Once the Notice is received, the Criminal Division Clerk's office assigns the motion to a judge who issues a standard IRAA scheduling order.

Mr. Williams' second IRAA application. Initially, Mr. Williams understood that he was to file his IRAA application on or before July 26, 2023, three years after the trial court order on his first motion. However, the Superior Court sua sponte ruled, on April 12, 2023, that Mr. Williams' IRAA application would not be timely until October 6, 2024—three years after the appellate mandate affirming the denial of his first application. On June 9, 2023, Mr. Williams filed a motion to establish the timeliness of his second IRAA application. The Public Defender Service for the District of Columbia ("PDS"), as Amicus Curiae, filed a brief in support of Mr. Williams' second IRAA motion. On July 7, 2023, the Superior Court denied Mr. Williams' motion to establish timeliness and vacated the briefing order.

## II.    Discussion

In response to constitutional imperatives,[3] the D.C. Council enacted the IRAA in 2016 to give juvenile offenders, whose crimes may be more indicative of immaturity than malice, the chance to live life outside of prison if they demonstrate maturity. *Williams v. United States*, 205 A.3d 837, 846 (D.C. 2019). The IRAA provides all juvenile offenders a "meaningful opportunity to obtain release based on

---

[3] *See Graham v. Florida*, 560 U.S. 48, 75 (2010) (when a juvenile is sentenced to life without parole, the State must give them a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."); *see also Miller v. Alabama*, 567 U.S. 460, 471 (2012) (courts must consider a child's diminished culpability and capacity for change before condemning them to die in prison); *see generally Montgomery v. Louisiana*, 577 U.S. 190 (2016).

their diminished culpability and their maturation and rehabilitation." *Id.* The IRAA allows for a person to seek modification of their sentence if the violation(s) that led to their imprisonment were committed before they were 25 years old. D.C. Code § 24-403.03(b)(1). Defendants have up to three opportunities for relief. *See* D.C. Code § 24-403.03(d). Initially, the IRAA limited eligibility to individuals who were 18 years old or younger at the time of their offense and required a waiting period of five years between successive motions. D.C. Code § 24-403.03 (2017). In 2019, the IRAA was amended to reduce the waiting period to three years, D.C. Code § 24-403.03 (2019), and in 2021, the IRAA was amended to extend eligibility to individuals who committed crimes before they were 25 years old. D.C. Code § 24-403.03 (2021).

The IRAA states, in relevant part:

> A defendant convicted as an adult of an offense committed before the defendant's 25th birthday may file an application for a sentence modification under this section. The application shall be in the form of a motion to reduce the sentence. The application may include affidavits or other written material.

D.C. Code § 24-403.03(b)(1). After considering the relevant factors, "[t]he court shall issue an opinion in writing stating the reasons for granting or denying the application, but the court may proceed to sentencing immediately after granting the application" D.C. Code § 24-403.03(b)(4). Further (and relevant to the present appeal),

> [i]f the court denies or grants only in part the defendant's 1st application under this section, a court shall entertain a 2nd application under this section no sooner than 3 years after the date that the order on the initial application *becomes final*. If the court denies or grants only in part the defendant's 2nd application under this section, a court shall entertain a 3rd and final application under this section no sooner than 3 years following the date that the order on the 2nd application *becomes final*. No court shall entertain a 4th or successive application under this section.

D.C. Code § 24-403.03(d) (emphases added).

At issue before us is whether an order on an initial IRAA application "becomes final" under the IRAA statute, D.C. Code § 24-403.03(d), when the trial court dockets its written order on the application or when the appellate process has run. We hold that an order on an IRAA application is final when the trial court issues its written order.

### A.    Standard of Review

We review issues of statutory interpretation de novo. *Hubb v. State Farm Mut. Auto. Ins. Co.*, 85 A.3d 836, 839 (D.C. 2014) (citing *Porter v. United States*, 769 A.2d 143, 148) (D.C. 2001)). Guided by the "primary and general rule of statutory construction," *Solon v. United States*, 196 A.3d 1283, 1287 (D.C. 2018) (quoting *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C. 2006)), we first look to see whether the statutory language is plain and truly unambiguous. *United States v. Facon*, 288 A.3d 317, 328 (D.C. 2023). "In determining the correct reading of statutory language, [this court] consider[s] statutory context and structure, evident

legislative purpose, and potential consequences of adopting a given interpretation." *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020). We analyze each method of statutory interpretation in turn.

## B.    Statutory Language

We begin our analysis by reviewing the language of the IRAA statute. *See Whitfield v. United States*, 99 A.3d 650, 656 (D.C. 2014) (explaining "the primary rule of statutory construction that the intent of the lawmaker is to be found in the language that he [or she] has used." (internal quotation marks omitted)). We focus our analysis on the language of D.C. Code § 24-403.03(d), which states that "a court shall entertain" subsequent IRAA applications "no sooner than 3 years after the date that the order on the initial application becomes final." In this case, the trial court determined, to the contrary, that an order on the initial IRAA application "becomes final" upon the issuance of the mandate by the Court of Appeals, if an IRAA applicant appeals the trial court's order, or at the expiration of the time to appeal, if the IRAA applicant does not appeal the trial court order. The government similarly argues that the phrase "becomes final" indicates that the order is not inherently final but, instead, comes to be final at some later point in time. Mr. Williams argues that the plain text and context of subsection (d) are such that the order on the initial application "becomes final" when the trial court issues its final order on the merits

of the motion, thereby starting the three-year waiting period. We agree with Mr. Williams.

"Finality is variously defined; like many legal terms, its precise meaning depends on context." *Clay v. United States*, 537 U.S. 522, 527 (2003). Black's Law Dictionary defines "final," in the context of a judgment, as "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded. . . . Once an order, judgment or decree is final, it may be appealed on the merits." FINAL, Black's Law Dictionary (11th ed. 2019). Additionally, this court has jurisdiction over appeals from "all final orders and judgments of the Superior Court." D.C. Code § 11-721(a)(1). Particularly where the statute envisions that a judge might rule from the bench and follow up with a written ruling, *see* D.C. Code § 24-403.03(b)(4), it makes sense to interpret the term "final" in the context of subsection (d) to describe the stage where the trial court's action is complete—i.e., when the trial court dockets its written order deciding an IRAA motion.

Moreover, if "becoming final" were meant to refer to reaching a state of finality after appeal, we think the Council would have been more explicit. But there is no language in subsection (d) conditioning finality—and, thus, the three-year waiting period—on the appellate process. The language of D.C. Code § 24-403.03(d) also does not link the finality of an order or the waiting period with the right to appeal. *See Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900

(2019) ("[A]s in any field of statutory interpretation, it is our duty to respect not only what [the legislature] wrote but, as importantly, what it didn't write.") We decline to read into the statute any such language that was omitted by the D.C. Council. This textual omission becomes more salient when we consider that, when finality is conditioned upon the appellate process, the D.C. Council has included such language in the statute. *See, e.g.*, D.C. Code § 47-3304(b) (a Superior Court decision in civil tax cases becomes final upon the expiration of the time allowed for filing a petition for review, appeal, or certiorari, upon the denial of the petition for appeal or certiorari, or 30 days from the appellate or Supreme Court mandate); D.C. Code § 32-1115(d) (decision of the Mayor becomes the final order unless appealed within 30 days); D.C. Code § 4-803(f) (determination to impose a penalty or assessment is final unless timely appealed).

Lastly, we consider the effect of reading subsection (d) to condition finality on the appellate process. The Council has clearly determined that three years between IRAA applications is sufficient time for a defendant to generate more evidence to demonstrate dispositive maturation and rehabilitation. Interpreting subsection (d)'s plain language to mean that an order on an IRAA motion becomes final upon the docketing of the trial court's written order so that further IRAA relief may be sought at predictable intervals aligns with that determination. But making the timing of subsequent IRAA applications dependent on the indeterminate

timetables of the appellate process does not. Indeed, it produces an absurdly unpredictable result. *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019) ("We will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result." (internal quotation marks omitted)). As a result, it could force a defendant to decide between two options: (1) pursue an appeal of their IRAA order and potentially delay their second IRAA motion for years; or (2) forgo an appeal—potentially leaving errors in the initial order uncorrected—in the interest of being able to file a second IRAA application as soon as possible.

Consider a hypothetical. A defendant files an initial IRAA application, which is denied by the trial court in 2020. The defendant chooses to appeal the trial court's order, arguing that the trial court erred because it misapplied the factors in D.C. Code § 24-403.03(c) and, thus wrongfully denied the application. The briefs are filed, the case is calendared, and we ultimately conclude that the trial court did not abuse its discretion in how it weighed the IRAA factors. The appellate mandate comes down in 2022. If the three-year waiting period were to run on the date of the trial court's written order, the defendant can file a second application in one year—in 2023. However, if the time for filing the petition runs from the appellate mandate, they have to wait until 2025. In this scenario, the appellate process has no bearing on the defendant's IRAA eligibility or ability to show their rehabilitation—it just functions to delay the defendant's opportunity for a sentence reduction by two years. In our

view, this outcome would be unfair and inconsistent with the language and intent of the statute. Absent language in the statute referring to the appellate process, an applicant should not be required to delay their second IRAA application while awaiting an appellate mandate on their first application.

We conclude that the finality of an order on an IRAA motion is not dependent on the appellate process and that the three-year waiting period between successive IRAA motions is triggered by the docketing of the trial court's written order.

### C.    Legislative Purpose & Context

We also turn to "the legislative history to ensure that our interpretation is consistent with legislative intent." *Robert v. United States*, 216 A.3d 870, 876 (D.C. 2019) (internal quotation marks omitted) (quoting *Facebook*, 199 A.3d at 628). "[E]ven where the words of a statute have 'superficial clarity,' a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." *Facon*, 288 A.3d at 328 (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983)). We find no such ambiguities here.

The IRAA's purpose is to ensure that juvenile offenders have a meaningful opportunity to seek release based on their maturity and rehabilitation. *Williams*, 205 A.3d at 846. It follows that the enacting legislature would intend for an individual to have as much opportunity as possible, under the statutory scheme, to seek relief—

i.e., being able to submit a second IRAA application after the trial court's disposition on the first application. Because "the words of a statute are to be construed to avoid 'obvious injustice,'" *Peoples Drug Store*, 470 A.2d at 754 (quoting *Metzler v. Edwards*, 53 A.2d 42, 44 (D.C. Mun. App. 1947)), we can determine that, in the context of the entire legislative scheme, the D.C. Council intended for the waiting period to run from the date of the trial court's order. *Floyd E. Davis Mortg. Corp. v. District of Columbia*, 455 A.2d 910, 911 (D.C.1983) (per curiam) ("a statute is to be construed in the context of the entire legislative scheme."). Additionally, reading D.C. Code § 24-403.03(d) to mean that an order "becomes final"—thus triggering the waiting period—when the trial court issues its written order furthers the legislative purpose in a way that waiting for the appellate process to run does not. Since its enactment, the IRAA has progressed toward offering greater relief by decreasing the length of the waiting period (from five to three years), lowering the amount of time a defendant must serve before applying for the IRAA (from twenty to fifteen years), and raising the age of eligibility (from eighteen at the age of the offense to twenty-five). Our reading of the statute is consistent with the Council's legislative intent. By reading the statute as we do, an IRAA applicant can file another IRAA application three years after the trial court order on their initial application, which gives an applicant the opportunity to seek prompt relief.

We note that, while, as we have determined, the IRAA statute does not require the appellate process to run before a defendant files a subsequent IRAA application, there may be circumstances where it is in the defendant's best interest to pursue an appeal of their initial IRAA application before filing a second application. For instance, a defendant may want to challenge the trial court's discretion in weighing and deciding on the IRAA factors, *see* D.C. Code § 24-403.03(c). This court, in this circumstance, might find that the trial court abused its discretion in denying the defendant's IRAA application, reverse the trial court's decision, and grant the IRAA application, thus making it unnecessary for the defendant to file a second IRAA application. Our reading of the statute does not foreclose either option: the defendant is free to pursue an appeal *and* a successive IRAA application or pursue an appeal *and then* a second IRAA application. On the contrary, conditioning successive IRAA applications on the appellate process unnecessarily injects arbitrariness and inconsistency into what is intended to provide regular, predictable opportunities for relief.

### III.   Conclusion

Accordingly, we hold that an order on an IRAA application becomes final, thus triggering the three-year waiting period to file a successive motion, when the trial court dockets its written order on the application. Therefore, the trial court's order is reversed and remanded.

*So ordered.*